UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

In Re                                              Chapter 11

Premier Operations Ltd.                            Case No. 00-42413 (BRL)

                            Debtor.                04 Civ. 9777 (PKC)
                                                   04 Civ. 7160 (PKC)

─────────────────────────────────────────────

Premier Operations LTD., Debtor,                   AP No. 02-3384

                            Plaintiff,

-against-                                           MEMORANDUM
                                                     AND
David Morgan Fine Arts International, Inc.,           ORDER

                            Defendant.

─────────────────────────────────────────────

P. KEVIN CASTEL, U.S.D.J.

       This is an appeal by David Morgan Fine Arts International, Inc. ("Morgan")

from a March 2, 2004 Order and a May 11, 2004 judgment of the Bankruptcy Court, granting

judgment in favor of the debtor, Premier Operations LTD. ("Premier" or "Debtor"), in an ad-

versary proceeding commenced by Premier to recover payments to Morgan, a creditor, dur-

ing the preference period.  Morgan conducted art auctions aboard Premier's cruise ships and

asserts that funds paid by passengers to Premier for artwork sold by Morgan were held in

trust by Premier, and that as a result, Morgan is not a creditor, and any payments by Premier

to Morgan during the preference period are not recoverable.  The Bankruptcy Court con-

cluded that, as a matter of law, the funds were not trust funds and Morgan is an unsecured

creditor.

This court has jurisdiction over this appeal, because the Bankruptcy Court's order completely resolves all issues pertaining to Morgan's claim. 28 U.S.C. § 158(a). <u>See In re Pegasus Agency</u>, 101 F.3d 882, 885 (2d Cir. 1996). The conclusions of law of the Bankruptcy Court are reviewed <u>de novo</u>. <u>See Sempra Energy Trading Corp. v. Covanta Union, Inc. (In re Ogden N.Y. Servs., Inc.)</u>, 312 B.R. 729, 739 (S.D.N.Y. 2004). A grant of summary judgment is reviewed <u>de novo</u>. <u>See Lombard v. Booz-Allen & Hamilton, Inc.</u>, 280 F.3d 209, 214 (2d Cir. 2002).

<u>Procedural History</u>

On or about September 18, 2000, the Acting Registrar of Companies sought the winding up of Premier, a corporation organized under the laws of Bermuda. (Pl. Rule 7056-1 Statement) The Bermuda Court appointed D. Geoffrey Hunter and Peter C. B. Mitchell to act as Joint Provisional Liquidators. By order dated October 20, 2000, the Bermuda Court authorized the Joint Provisional Liquidators to proceed against Premier to recover an alleged preferential payment to Morgan. On October 24, 2000, the Joint Provisional Liquidators filed an involuntary petition pursuant to section 303(b)(4) of the Bankruptcy Code. Thereafter, this adversary proceeding was commenced against Morgan, invoking jurisdiction under 28 U.S.C. § 1334(b), and seeking to recover $27,677.80 in alleged preferential payments. Specifically, Premier contends that the foregoing sums were paid by checks, which were honored within 90 days of the October 24, 2000 filing and were preferential transfers of the debtor's property while the debtor was insolvent. Morgan also asserted a counterclaim based on allegations that Premier held the funds for Morgan's benefit as a trustee, and further sought to avoid liability for the preferential payments by asserting that it had

provided Premier with $20,124.48 in "new value" during the preference period.

11 U.S.C. § 547(a)(2).

Premier moved for summary judgment on its claim against Morgan.  Morgan opposed that motion and cross-moved for summary judgment on its "new value" claim and on its claim that Premier held the funds in trust.  On February 26, 2004, Judge Burton R. Lifland heard oral argument on Premier's motion and a companion motion raising the same issue in which the creditor was also represented by Premier's counsel.  The Court granted Premier's motion in its entirety.  The Court also denied defendant's motion for summary judgment on its counterclaims.  It entered an Order dated March 2, 2004 reflecting its February 26 rulings.  Thereafter, the Court granted in substantial part Morgan's motion on its "new value" claim, finding that the proper amount Morgan was entitled to offset was $14,989.39, leaving Morgan liable to Premier's estate for $8,700.64.  (Order of May 6, 2004)  By Order dated May 11, 2004, the Court dismissed Morgan's constructive trust counterclaim, and on the same date entered a judgment in favor of Premier and against Morgan in the amount of $8,700.64 plus interest.

On March 10, 2004, Morgan filed a notice of appeal from the Bankruptcy Court's March 2, 2004 Order granting Premier's motion for summary judgment and denying Morgan's motion for summary judgment.  See In re Premier Operations Ltd., 04 Civ. 7160 (JGK).  Morgan filed a second notice of appeal on May 17, 2004 from the May 11, 2004 Order dismissing its constructive trust counterclaim and from the May 11, 2004 the judgment in favor of Premier.  See Premier Operations Ltd. v. David Morgan Fine Arts International, Inc., 04 Civ. 9777 (PKC).  Both appeals have now been assigned to me and are deemed consolidated.  I reject Premier's argument that the appeal in 04 Civ. 9777 should be dismissed be-

cause the appeal was not perfected in 04 Civ. 7160. Premier has failed to demonstrate that any of the procedural defects are jurisdictional.

The Agreement Between the Parties

Premier operates a cruise line. Morgan conducts art auctions. By letter agreement dated October 15, 1997 (the "Letter Agreement"), Morgan agreed to conduct art auctions aboard Premier's vessel, the S.S. Oceanic. The Letter Agreement written on Morgan's letterhead appears to have been initially applicable to a single vessel but over time was treated as governing the overall relationship between Premier and Morgan on all vessels. The applicability of the Letter Agreement to the funds at issue is not disputed by Morgan. (Camina Aff't, Ex. A.)

Under the terms of the Letter Agreement, Morgan was an "independent contractor" providing art auctions. Premier provided a lounge for the auctions, promotional activities aboard the vessel, staff assistance for set-up (for a fee) and one cabin and meals for the auctioneer. In exchange, Morgan agreed to provide the artwork and a qualified auctioneer and to "[p]ay Premier Cruises 25% of gross sales" plus $10.56 per day for its auctioneer's food and a prorated credit card processing fee. The Letter Agreement provided that a member of the purser's staff was to be present during all auctions to monitor sales. All transactions with passengers were to be processed through the vessel's "cashless system," through which passengers incur on-board charges, with the total of all on-board charges then billed to the passenger's credit card. Premier agreed to pay Morgan a sum "equal to the gross receipts less appropriate deductions (commissions, cashless charges, and food charges) within two weeks after disembarkation of each cruise." For transactions taking place aboard the S.S.

Oceanic, two cruises of three and four days each were considered to be "a single billing pe-riod" under the Letter Agreement.

<u>Discussion</u>

As noted at the outset, Morgan asserts that the monies paid by the passengers to Premier for art purchases were held by Premier in trust for the benefit of Morgan. The Bankruptcy Court concluded, <u>inter alia</u>, that the Letter Agreement did not establish a trust in favor of Morgan, and that the funds were not segregated in any identifiable way and could not be traced. As a result, the Bankruptcy Court granted summary judgment in favor of Pre-mier on its claim for recovery of payments made to Morgan during the preference period.

According to § 547 of the Bankruptcy Code, avoidance of transfer is permit-ted if the transfer was "an interest of the debtor in property," 11 U.S.C. § 547(b), and if five statutory conditions are met. <u>See</u> <u>Union Bank v. Wolas</u>, 502 U.S. 151, 154-55 (1991). The five conditions of a voidable transfer are "that it (1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days be-fore bankruptcy; and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made." <u>Id</u>.

Of course, if the funds were not a debt but rather assets of Morgan held in trust by Premier, then the preference recovery provision would have no application. <u>See</u> <u>Be-gier v. IRS</u>, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'" )

The Bankruptcy Court concluded that the monies initially held by Premier and paid to Morgan did not have the indicia of having been held in trust. As an alternative hold-ing, it concluded that Morgan could not trace or separately identify the funds held in the

hands of Premier. Morgan concedes that an alleged beneficiary must generally trace the trust funds back to the trust but argues that the burden of tracing should not be required in a preference action where the defendant has already received and holds the monies alleged to have been previously held in trust. In <u>Daly v. Radulesco (In re Carrozzella & Richardson)</u>, 247 B.R. 595, 602 (B.A.P. 2d Cir. 2000) the Bankruptcy Appellate Panel ("BAP") of the Second Circuit, reversing the Bankruptcy Court, concluded: "Once the Trustee established that the Debtor had control of the [commingled] Account . . . by showing that the funds in the Account were used by the Debtor for all manner of expenditures, then the burden of proof shifted to the Defendants to prove (1) that the Debtor had only legal title to the Defendant's money and (2) to trace their interest to their specific property." <u>Id.</u> at 602.[1] Subsequently, in <u>Daly v. Deptula (In re Carrozzella & Richardson)</u>, 255 B.R. 267 (Bankr. D. Conn. 2000), the Bankruptcy Court concluded that decisions of the BAP, consisting of Article I Bankruptcy Judges, did not create binding precedent and that a preference defendant did not have the burden of proving tracing. It reasoned that "by transferring funds back to the defendants on request, the debtor-trustee has essentially and presumptively 'traced' the funds for the defendants." 255 B.R. at 276; <u>see also</u> <u>Chrysler Credit Corp. v. Hall</u>, 312 B.R. 797, 807-809 (E.D. Pa. 2004) (burden of proof on tracing is on the trustee rather than the defendant in the preference action). The issue of whether a preference defendant bears the burden of proof on tracing funds already paid by the debtor-trustee is an important one. I need not reach this alternative holding of the Bankruptcy Court, however, because I conclude that the Bankruptcy

---

[1]  <u>See also</u> <u>Taylor Associates v. Diamant (In re Advent Mgmt. Corp.)</u>, 104 F.3d 293, 296 (9th Cir. 1997) ("Under the strict tracing standard applicable to bankruptcy cases involving commingled funds, [the alleged beneficiary] bears the burden of tracing the alleged trust property 'specifically and directly' back to the illegal transfers giving rise to the trust."); <u>Cassirer v. Herskowitz (In re Schick)</u>, 234 B.R. 337, 342-3 (Bankr. S.D.N.Y. 1999) (citing a long line of cases both within and outside the bankruptcy context for the proposition that the beneficiary of the alleged trust must satisfy the tracing requirement).

Court was correct in concluding that the arrangement between Premier and Morgan was inconsistent with the existence of a trust. (See Memorandum Decision at pp. 6-8.)

State law controls the existence of and interest in property. See Butner v. United States, 440 U.S. 48 (1979). Here, Premier was incorporated in Bermuda but had its principal place of business in Florida. The checks drawn in favor of Morgan list a Florida address for Premier. The Letter Agreement lists a Florida address for Morgan and was sent to Premier at a Florida address. I conclude that Florida law governs the issue of whether a trust was created between these parties. Under Florida law, to establish an express trust there must be a lawful subject matter—a *res*—and competent parties and terms of trust. See Reid v. Barry, 93 Fla. 849, 868 (1927). Florida recognizes "implied trusts" but to give rise to such a trust, the words used must permit the court to "infer[] or impl[y] that it was the purpose or intention of the parties to create a trust." Id. at 878. "No particular form of words is necessary to create a trust, and whether one exists is to be ascertained from the intention of the parties as manifested by the words used and the circumstances of the particular case." Id. at 873. "'When a resulting trust is sought to be established by parol evidence, the burden rests upon the person asserting the existence of the trust to remove every reasonable doubt as to its existence by clear, strong, and unequivocal evidence.'" United States v. Kaplan, 277 F.2d 405, 409 (5th Cir. 1960) (quoting Fox v. Kimball, 92 Fla. 401 (1926)).

The Restatement (Third) of Trusts § 5 (2003) distinguishes the characteristics of a debt arising from a contractual arrangement from those of a trust:[2]

> When one person transfers funds to another, it depends on the manifested intention of the parties whether the relationship created

---

[2] Florida Courts frequently cite the Restatement of Trusts. See, e.g. Persan v. Life Concepts, Inc. 738 So. 2d 1008, 1012 (Fla. Dist. Ct. App. 1999) (citing provisions of the tentative draft of the Third Edition).

> is that of trust or debt. If the intention is that the money shall be
> kept or used as a separate fund for the benefit of the payor or one
> or more third persons, a trust is created. If it is intended, however,
> that the person receiving the money shall have the unrestricted use
> of it, being liable to pay a similar amount to the payor or a third
> person, whether with or without interest, a debt is created. [3]

Here, Morgan's arguments for the existence of a trust are neither supported by

the intention of the parties as manifested in the Letter Agreement nor by the existence of a

separate fund.  If the premise of Morgan's trust argument is that the monies became a trust

*res* the moment a purchasing passenger incurred a charge via the cruise line's cashless sys-

tem, then this argument fails to take account of the fact that no funds are paid by the passen-

ger at that moment of purchase.  The amount of the debt running from the passenger to the

cruise line does not result in a dollar for dollar credit to Morgan because it is subject to off-

sets in amounts yet to be determined.  There are categories of offsetting payments, which

Morgan owes to Premier.  These include not only the 25% commission paid to Premier, but

also food expense items, payments for the use of cruise staff for set up and Morgan's share of

the merchant's credit card fee charged to Premier.  Nor may Morgan successfully argue that

the trust *res* came into existence when Premier was credited with the entire balance due from

that passenger by the bank issuing the passenger's major credit card.  This argument fails to

take account that the Letter Agreement did not make Premier's obligation to pay Morgan de-

pendent upon Premier first receiving payment from the passenger's bank.  The Letter

---

[3]  Cf. G. G. Bogert & G. T. Bogert, The Law Of Trusts And Trustees § 17 (Rev. 2d ed. 1984 & 2004
Supp.) ("While one normally does not enter into a contract with another unless he trusts and has confi-
dence in him, contract and debt amount to a business and not to a fiduciary relationship. The rights and
duties of parties to a contract may generally be freely transferred. The trustee cannot assign his trustee-
ship or delegate the performance of his duties. The debtor is held to no unusual standards of honesty
and good faith, while the duty of the trustee in that regard is extraordinary. There is no rule that parties
to a contract may not freely act for their own interests during the execution of the contract. They have
no duty of loyal representation of the opposing party in the relationship. The lack of the fiduciary ele-
ment in contract and the presence of it in trust are often made bases for distinctions in practical re-
sults.") (footnotes omitted).

Agreement provided that Premier will "pay" Morgan "within two weeks of disembarkation." The Letter Agreement says nothing about payment to Morgan being conditioned upon payment to Premier by the passenger or the passenger's credit card issuing bank. Indeed, had Premier failed to pay Morgan at the expiration of the two week period, Morgan likely would have prevailed on a claim that it was entitled to interest on the unpaid sums.

In short, Morgan's argument fails because there is no evidence that it was the parties' intention to create a trust, nor any evidence of a *res* that was the subject matter of the trust. The judgment of the Bankruptcy Court is affirmed. The Clerk is directed to close 04 Civ. 7160 and 04 Civ. 9777.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      April 25, 2005